# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION**<br><br>This Document Relates to:<br><br>*Murray v. Philips, et al.*, #23-627 | Master Docket: Misc. No. 21-1230<br><br>MDL No. 3014 |

## MEMORANDUM OPINION

### I.   Introduction

Pending before the court is a motion to remand this case to the Santa Barbara, California Superior Court, Cook Division ("state court") (Civ. No. 23-627, ECF No. 2) filed on behalf of plaintiff Robert Murray ("Murray"). Philips North America LLC, on behalf of the various Philips-related entities named as defendants (collectively, "Philips"), filed a brief in opposition to the motion (ECF No. 10), with attachments. There was related briefing with respect to a motion to extend the deadline in the Philips MDL for filing remand motions or to set a separate hearing for Murray's motion (ECF Nos. 6, 8, 9).

The court scheduled oral argument for May 6, 2025. Because counsel for Murray did not appear in court (or respond to the inquiries from Philips' counsel), the motion will be resolved by the court without oral argument (ECF Nos. 11, 12). The motion is ripe for disposition.

II.    Procedural History

In his state court complaint, Murray named as defendants various Philips-related entities (none of which is a citizen of California) and Dr. Jeffrey R. Polito ("Polito").  Polito is a medical doctor specializing in internal medicine and sleep medicine and is a citizen of California.  Complaint ¶ 8.  Murray is also a citizen of California.  Complaint ¶ 1.

Murray alleges that Polito, a sleep specialist, prescribed a Philips CPAP device for him "in or about 2015."  Complaint ¶¶ 18, 19. Polito instructed Murray to use the Philips CPAP for sleep apnea every night.  Complaint ¶¶ 31-33.  Murray did so for 7 years.  Complaint ¶ 33.  Murray alleges he suffered harm to his respiratory system, cellular damage, metastatic disease and kidney cancer as a result of his use of the device.  Complaint ¶ 37.  Murray filed a 10-count complaint in the state court.

The only count that named Polito as a defendant was count 5 (negligent failure to warn). Murray alleges:  "At some point after the recall was issued by Philips, Polito became aware of it. Polito knew that he had prescribed Recalled Devices.  Polito did not inform Plaintiff of the Philips recall."  Complaint ¶ 29.  In count 5, Murray alleges that Philips should have warned Polito and Murray of the dangers inherent in the subject device.  Complaint ¶ 94.  Murray also alleges, however, that as a medical professional specializing in sleep issues, Polito knew or should have known about the recall of Philips devices, but never contacted Murray to inform him that the device Polito had prescribed to Murray had been recalled.  Complaint ¶¶ 95-96.  Murray alleges that Polito's failure to warn him was a contributing factor in his harm.  Complaint ¶ 99. Murray alleges that he used the Philips CPAP device for 14 months after the recall.  Complaint ¶ 43.

2

Philips attached the Plaintiff Fact Sheet that was filed by Murray on the master docket in the Philips MDL (ECF No. 10-2). The Plaintiff Fact Sheet was submitted under penalty of perjury. Of relevance to the pending motion, Murray stated: (1) he obtained the Philips CPAP device in September 2014, *Id.* at 9; and (2) Polito was his physician for sleep apnea from 2014 to 2016, *Id.* at 11 (handwritten)).[1]

Philips removed Murray's state court complaint to the United States District Court for the Central District of California. The MDL Panel transferred the case to this court for pretrial proceedings as part of the Philips MDL. Civil Action No. 23-627 was commenced in this court when Murray filed a short form complaint on April 13, 2023 (ECF No. 1). Murray filed the pending motion for remand in this court on April 18, 2023 (ECF No. 2).

III.   Discussion

Murray challenges subject-matter jurisdiction in the federal courts under 28 U.S.C. § 1332(a). He argues that there is not complete diversity of citizenship between plaintiff and defendants, because Murray and Polito are both citizens of California. Philips invokes the "fraudulent joinder" doctrine and argues that Polito's citizenship can be ignored because he was improperly named as a defendant in order to defeat removal.

A.   Legal standard

This court will apply Third Circuit law with respect to the fraudulent joinder doctrine. As explained in *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp.2d 667 (E.D. Pa. 2003):

> As an MDL court sitting within the Third Circuit, defendant Wyeth is correct that we must apply the fraudulent joinder standard of our Court of Appeals, not that of

---

[1] There is a note that Polito prescribed melatonin to Murray for sleep apnea in August, 2017 (ECF No. 10-2 at 11).

3

the Eleventh Circuit. *See In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174 (D.C.Cir.1987); *In re Ikon Office Solutions, Inc. Secs. Litig.*, 86 F.Supp.2d 481, 485 (E.D.Pa.2000).

*Id.* at 672.

The applicable standard was recently summarized in *Contreras Madrid v. Walmart Stores E., LP*, No. CV 24-5229, 2025 WL 824124 (E.D. Pa. Mar. 14, 2025):

> A defendant in state court can remove a case to federal court if the federal court would have original jurisdiction over it. *See* 28 U.S.C. § 1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).
>
> A federal court has diversity jurisdiction where there is complete diversity—that is, no plaintiff is a citizen of the same state as any defendant—and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 150 (3d Cir. 2017). The doctrine of fraudulent joinder, however, allows a defendant to remove an action to federal court if a nondiverse defendant was joined solely to destroy diversity jurisdiction. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). Joinder is fraudulent if "there is **no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment**." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). If the court determines joinder was fraudulent, it "can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* (quotation and citations omitted). But if the court determines joinder was not fraudulent, it lacks subject matter jurisdiction and must remand to state court. *See* 28 U.S.C. § 1447(c).
>
> The **removing party arguing fraudulent joinder has a "heavy burden** of persuasion." *Steel Valley Auth.*, 809 F.2d at 1012 n.6. **The district court must consider the complaint at the time the notice of removal was filed and accept all factual allegations in the complaint as true.** *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992). Although a court cannot "step 'from the threshold jurisdictional issue into a decision on the merits,'" it can "look to more than just the pleading allegations" when ruling on a fraudulent joinder motion. *Briscoe*, 448 F.3d at 219 (quoting *Boyer*, 913 F.2d at 112). **Thus, a removing defendant can rely on "evidence outside the pleadings, including such supporting documents as affidavits and deposition transcripts."** *Yellen v. Teledne Cont'l Motors, Inc.*, 832

4

> F. Supp. 2d 490, 503 (E.D. Pa. 2011) (quoting Charles A. Wright & Arthur R. Miller, 14C Federal Practice & Procedure § 3723.1 (4th ed., Apr. 2021 update)).
>
> When deciding whether it has subject-matter jurisdiction, the Court's examination of the plaintiff's claims is less probing than on a motion to dismiss. *Batoff*, 977 F.2d at 852. Therefore, even if a party is not fraudulently joined, the claims against that party may ultimately be dismissed on a Rule 12(b)(6) motion. *Id.* Indeed, the fraudulent joinder analysis requires the court to ask only whether the claims are "**wholly insubstantial and frivolous**," and "**all doubts should be resolved in favor of remand**." *Id.* at 851–52.

*Id.* at *2 (emphasis added).

To summarize, Philips has a "heavy burden" and all doubts must be resolved in favor of remand. The remand standard is more deferential toward the plaintiff's claims than the motion to dismiss standard. In other words, the court may remand a case to the state court even if it believes the state court may dismiss the case for failure to state a claim. It is Philips' burden to show there is "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Id.*

B. Application to this case

Philips argues that Polito was fraudulently joined because the doctor's only role was prescribing the CPAP device seven years prior to the recall and Murray stopped being his patient in 2016, five years prior to the recall. Philips points out, correctly, that in counts I and II of the state court complaint, Murray alleges that Philips failed to properly warn Polito about the alleged defects in the Philips CPAP devices.

With respect to the negligent failure to warn claim against Polito, Philips correctly observes that the only two cases involving the duty to warn cited in Murray's motion[2] involved a manufacturer's duty to warn a physician, not a physician's duty to warn a

---

[2] Murray cited *Carlin v. Superior Court*, 13 Cal.4th 1104 (Cal. 1996), and *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App.4th 1467 (Cal. Ct. App. 1999) (*see* ECF No. 2 at 6).

5

former patient. (ECF No. 10 at 13-16). Philips argues that Murray is articulating a "novel failure-to-warn theory" and failed to cite "clear authority imposing such an onerous and continuing duty on Dr. Polito after the end of the doctor/patient relationship." *Id.* at 14-15. Philips argues "this Court should not expand on California law in the absence of express authority." *Id.* at 15.

Philips misstates the applicable standard. In evaluating whether the removal from state court was proper, the test is <u>not</u> whether there is "clear authority" favoring plaintiff's theory; but rather, whether there is any "reasonable basis in fact or colorable ground supporting the claim." *Id.*

In the court's independent research, the court discovered authority, *Tresemer v. Barke*, 86 Cal. App. 3d 656 (Cal. Ct. App. 1978), that supports a colorable claim against Polito. *See Molsbergen v. United States*, 757 F.2d 1016, 1022-23 (9th Cir. 1985) (discussing *Tresemer* at length). In Murray's reply brief opposing the deadline for remand motions, Murray cited *Tresemer* as "a case very similar to the present case." (ECF No. 9 at 6). Philips did not address the *Tresemer* decision.

In *Tresemer,* the court held that a plaintiff stated a cause of action against a doctor for that doctor's failure to warn a former patient of dangers posed by a device the doctor inserted into the plaintiff several years earlier. The doctor interacted with the patient only once, when he inserted a Dalkon Shield intrauterine device in 1972. *Id.* at 665. At that time, the Dalkon Shield was believed to be safe and effective. *Id.* at 667. "It was not until approximately two years later that serious question as to its general safety was first raised and acknowledged in the general medical community; shortly thereafter it was withdrawn from the market." *Id.*

The plaintiff's theory of recovery was "that defendant had a duty to warn her of the dangerous effects of the Dalkon Shield when, subsequent to its insertion, he obtained actual knowledge of its hazards, and that his failure to do so amounted to negligence or willful, wanton and reckless disregard for the consequences." *Id.* at 669. The court explained, at length, that whether a legal duty exists is a complex, multi-faceted question of law that is determined by the courts alone. *Id.* at 669-672. The court noted that absent special circumstances, manufacturers have no duty to warn patients and asked rhetorically: "Who then is to tell the patient of hazards newly discovered and not known at the time of the original patient-physician contact when the drug or medical appliance was prescribed?" *Id.* at 671.

The court concluded that the plaintiff stated a cognizable cause of action against her former doctor for negligent failure to warn. The duty arose "by virtue of a confidential relationship between doctor and patient." *Id.* at 672. The court explained: "It is not a malpractice cause of action in the commonly understood sense but rather a malpractice action from the imposed continuing status of physician-patient where the danger arose from that relationship." *Id.*

The relationship between Murray and Polito is arguably analogous to that between the doctor and former patient in *Tresemer*. In each case, the former patient sought out a medical specialist, received medical advice and treatment which was intended to continue into the future, and the active doctor-patient relationship ended. Accepting the factual allegations in the complaint as true, Polito instructed Murray to use the Philips CPAP device daily, for an indeterminate period of time. Like in *Tresemer*, at the time the medical advice was given, there were no known concerns, but later, dangers about the

medical device were learned. Under those circumstances, following *Tresemer*, there is a cognizable negligent failure to warn claim by the patient, Murray, against his former physician, Polito.

The court concludes that Murray's negligent failure to warn claim against Polito is at least colorable and not "wholly insubstantial and frivolous." *Contreras Madrid*, 2025 WL 824124 at *2. Philips failed to meet its heavy burden to demonstrate that Polito was fraudulently joined. Because Polito and Murray are both citizens of California, the federal courts lack diversity of citizenship jurisdiction over this case and the removal was improper. The case must be remanded to the state court.

    C. Severance

As alternative relief if the court determines that Polito was not fraudulently joined, Philips asks the court to sever and retain Murray's claims against Philips as part of the Philips MDL. In *In re: Bard Ivc Filters Products Liability Litigation*, No. 2641, 2016 WL 2956556 (D. Ariz. May 23, 2016), the court declined to sever where the initial removal from the state court was improper:

> Some district courts have opted to sever and remand claims against a nondiverse party to perfect diversity jurisdiction. Doc. 1217 at 11-12 (citing *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009); additional citations omitted). The Court cannot conclude that such an approach is proper where no fraudulent misjoinder has been found and all doubts are to be resolved against the exercise of federal court jurisdiction. *Batoff*, 977 F.2d at 851; see 28 U.S.C. § 1447(c). The proper remedy is remand. . . .

*Id.* at *7; *accord Saviour v. Stavropoulos*, No. CV 15-5362, 2015 WL 6810856, at *5 (E.D. Pa. Nov. 5, 2015) (courts frown on using Rule 21 severance "to conjure removal jurisdiction that would otherwise be absent."). In *Saviour*, the court noted that "[a] number of courts have declined to sever non-diverse parties under circumstances similar

to those presented in this case, even where the remaining claims could have been transferred to an MDL." *Id.* (collecting decisions).

The question about whether removal was proper analytically precedes the question about whether the claims against Polito should be severed from the claims against Philips. Severing claims after an improper removal would end-run the strict limits on removal jurisdiction. *Id.; see* Fed. R. Civ. P. 82 (Rules of Civil Procedure do not extend the jurisdiction of the district courts). Because this case is not properly in any federal court, this court does not reach Philips' request for severance. Philips may seek severance after the case is remanded to the state court. *See Alvarado v. Sweetgreen, Inc.*, 712 F. Supp. 3d 393, 411 (S.D.N.Y. 2024) ("A defendant who believes that two claims have been joined improperly for the purpose of defeating federal jurisdiction or, even if not joined for a fraudulent purpose, that the two claims will not survive in a single complaint, is not without recourse. She can still "seek severance in state court, which would render the propriety of subsequent removal to federal court straightforward."); 14C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3723.1 (2018 & Supp. 2025).

### D.  Counsel fees

Murray seeks counsel fees of $15,000 associated with "dealing with this motion," (ECF No. 2 at 2), i.e., the response to Philips' notice of removal and preparation of his motion for remand. Pursuant to 28 U.S.C. § 1447(c), the court "may" require Philips to pay just costs and any "actual expenses, including counsel fees, incurred as a result of the [improper] removal."

The court agrees with Murray that remand is appropriate, primarily based on the decision in *Tresemer*. Murray cited that decision, albeit not in his original remand motion, but only in a reply brief on the related scheduling motion. Philips never addressed the decision in *Tresemer*.

Murray's counsel provided little evidence about the "actual expenses" incurred, other than a declaration that he spent nine hours working on the motion and three hours "dealing with Defendant's efforts to stay this motion." (ECF No. 2 at 10). Counsel stated, without documentary support, that his billing rate is $900 per hour. Philips did not challenge those assertions. The request for $15,000 was premised, in part, on Murray's counsel's anticipation that he would have to travel to Pittsburgh for the hearing. *Id.* As noted, Murray's counsel did not attend the hearing and did not seek to appear by video. Under those circumstances, the court will not require Philips to pay the full $15,000 in counsel fees requested by Murray.

Murray must submit a request for payment of his counsel fees which details the reasonable time involved for the motion to remand, the services he rendered, and his reasonable hourly rate. The request for payment must be filed no later than May 30, 2025 and Philips may file any objections to the request no later than June 13, 2025.

IV.   Conclusion

For the reasons set forth above, the court concludes that Polito was not fraudulently joined, and therefore, the federal courts lack subject-matter jurisdiction over this case. The motion to remand this case to the state court (ECF No. 2) will be granted. Civil Action No. 23-627 shall be remanded FORTHWITH to the Santa Barbara, California

Superior Court, Cook Division.   Philips must pay Murray the actual expenses he incurred, including counsel fees, pursuant to 28 U.S.C. § 1447(c); the appropriate amount will be determined after Murray files a detailed application for the payment of the actual expenses he incurred as a result of the improper removal.

    An appropriate order will be entered.

Dated:  May 15, 2025

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Court Judge